[Cite as *Sprouse v. Brooks*, 2026-Ohio-2679.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

KENDRA MARIE SPROUSE,                 CASE NO. 1-26-01

    PLAINTIFF-APPELLEE,

v.

GABRIEL BROOKS,                       **OPINION AND**
                                      **JUDGMENT ENTRY**
    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Domestic Relations Division
Trial Court No. DR 2011 0201

Judgment Affirmed

Date of Decision: July 13, 2026

**APPEARANCES:**

    *Gabriel C. Brooks,* Appellant

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Gabriel Brooks ("Brooks") brings this appeal from the judgment of the Court of Common Pleas of Allen County, Domestic Relations Division overruling Brooks' objections to the magistrate's decision and affirming the decision of the magistrate. Brooks claims on appeal that the trial court erred for numerous reasons. For the reasons set forth below, the judgment is affirmed.

{¶2} On December 6, 2010, Kendra Sprouse ("Sprouse") executed an affidavit in support of establishing paternity. The Bureau for Child Support Enforcement in Parkersburg, West Virginia forwarded the affidavit, together with a uniform support petition, a child support transmittal #1-initial request, and a form of general testimony to the Allen County Child Support Enforcement Agency ("the Agency") requesting an establishment of paternity and child support for a child born in Parkersburg, West Virginia in January of 2008. Doc. 1-4. The child was allegedly conceived in Lima, Ohio. Doc. 2. Genetic material was drawn from Brooks on March 9, 2011, and from Sprouse and the child on March 16, 2011. Doc. 5. On April 14, 2011, the Agency filed, in the Court of Common Pleas, Division of Domestic Relations in Allen County, Ohio, the above documents together with the genetic test results noting that Brooks could not be excluded as the biological father of the child with the probability of paternity being 99.99%. Doc. 5. On July 12, 2011, the trial court entered an agreed judgment entry in which Brooks

acknowledged that he is the father of the child and he agreed to pay $263.43 per month in child support. Doc. 14. No appeal was taken from this judgment.

{¶3} On December 2, 2014, the Agency filed a motion for contempt against Brooks alleging that he had not paid the support he owed. Doc. 16. Due to Brooks' status as indigent, the trial court appointed counsel for the contempt hearing. Doc. 21. The hearing on the motion was set for August 3, 2015, but Brooks failed to appear. Doc. 26. The trial court then issued a bench warrant. Doc. 26. The matter was resolved by an agreed judgment entry in which Brooks agreed to serve a 30 day jail term and agreed to comply with wage withholding when employed. Doc. 33. Brooks also agreed to pay his child support monthly as well as an additional 20% to be applied to the arrearage when he was employed. Doc. 33. The parties agreed that the jail sentence would be suspended if Brooks complied with the terms. Doc. 33. On December 14, 2015, the trial court held a second hearing and found that Brooks had complied with the prior order, and continued the suspension of the jail sentence pending Brooks' continued compliance with the agreed support order. Doc. 36.

{¶4} On January 17, 2023, the Agency filed notice that Sprouse had requested an administrative review of child support with the date certain being November 7, 2022. Doc. 38. The Agency conducted the review and recommended that Brooks be ordered to pay $1,058.26 per month in child support and cash medical support. Doc. 38. The change was based upon a substantial increase in Brooks'

income.  Doc. 39.  The trial court granted the modification of child support after the administrative review.  Doc. 39.  No appeal was taken from this modification.

{¶5} On April 3, 2025, another administrative review was conducted by the Agency.  Doc. 44.  The Agency recommended that Brooks be ordered to pay child support and cash medical support totaling $638.99 per month.  Doc. 44.  Additionally, the Agency recommended that Brooks be ordered to pay $125.29 per month on arrears.  Doc. 44.  Brooks requested a review hearing and then a judicial review.  Doc. 44.  The basis for Brooks's claim was that there was "Fraud!! Violations of my Constitutional Rights! Violations of the Constitution! Never had Jurisdiction over me! Paternity not properly made!" Doc. 44.  A judicial hearing on Brooks's review request was held on September 17, 2025.  Doc. 65.  On October 5, 2025, Brooks filed a motion to close the case and terminate child support, a motion to dismiss for lack of jurisdiction, a motion to vacate retroactive child support arrears, an emergency motion to quash enforcement, and other motions not raised in this appeal.  Doc. 50-55.

{¶6} On October 22, 2025, the magistrate entered a decision on all of these matters.  Doc. 65.  The magistrate found that Brooks had agreed to the genetic testing and that he had not previously raised any objection to being asked to submit to the testing and had not filed an appeal from the July 12, 2011 judgment entry establishing paternity.  Doc. 65 at 4.  Likewise, Brooks did not object to the prior contempt filing, agreed to the entry of contempt, and did not appeal from that

judgment entry. Doc. 65 at 5-6. As to the November 2022 administrative review of child support, the magistrate again found that Brooks did not raise any objection and did not appeal from the judgment entry adopting the recommendations of the Agency. Doc. 65 at 6. The magistrate then found after reviewing the Agency's recommendations that the evidence before it revealed no error in the Agency's calculations. Doc. 65 at 8. The magistrate then ordered Brooks to pay an aggregate amount of $626.46 per month in child support and cash medical support. Doc. 65 at 9.

{¶7} On October 27, 2025, Brooks filed objections to the magistrate's decision. Doc. 66. Brooks claimed 1) the trial court lacked jurisdiction as it should have been heard by the juvenile court; 2) legal paternity was never established without coercion; 3) since paternity was not properly established, child support could not be ordered; 4) constitutional violations; 5) fraud; 6) separation of powers violation; and lack of jurisdiction. Doc. 66. No transcript of the hearing was requested or provided by Brooks. The Agency filed a response to the objections. Doc. 70. On December 3, 2025, Brooks filed a demand for a "full audit of retroactive arrears from day one". The trial court entered judgment on December 10, 2025, overruling the objections raised by Brooks and implementing the decision of the magistrate regarding the administrative review of child support. Doc. 74 and 75. On December 29, 2025, the trial court entered judgment denying Brooks' outstanding motions. Doc. 76. Brooks filed his notice of appeal from the December

10, 2025 ruling on January 5, 2026, and raised the following assignments of error on appeal.

### First Assignment of Error

**The trial court and IV-D agencies lacked jurisdiction and lawful authority to impose and enforce child support against [Brooks] because (1) no signed Acknowledgment of Paternity, valid court adjudication or properly authenticated birth certificate with clerk's signature established paternity prior to Ohio enforcement; (2) Ohio unlawfully assumed jurisdiction after West Virginia's General Testimony showed no paternity established and no support order existed; and (3) any subsequent paternity determination resulted from coercion through threats of contempt, jail, license suspension, passport denial, and wage garnishment.**

### Second Assignment of Error

**Procedural due process under the Fourteenth Amendment requires that, before the State deprives a person of significant property or liberty interests it provides notice and an opportunity to be heard at a meaningful time and in a meaningful manner. The Mathews v. Eldridge balancing factors – private interest, risk of erroneous deprivation , and governmental burden--underscore that pre-deprivation hearings are essential where continued wage garnishment, tax offsets, and passport restrictions are based on disputed and undocumented arrears.**

### Third Assignment of Error

**Extrinsic fraud and unconstitutional conflicts undermine the proceedings.**

### Fourth Assignment of Error

**State actors violated constitutional guarantees under color of law.**

**Fifth Assignment of Error**

**The trial court and state actors violated [Brooks'] due process rights and App.R. 7 during the pendency of this appeal by continuing enforcement activity after the appeal was docketed, conducting an unnoticed January 7, 2026 hearing and case closure, and causing continuing harm through credit reporting and related collection activity.**

The December 10, 2025 judgment entry was the only order appealed.

*Jurisdiction*

{¶8} In Brooks' first assignment of error, he alleges that the trial court lacked subject matter jurisdiction and personal jurisdiction. "'Subject matter jurisdiction refers to the constitutional or statutory power of a court to adjudicate a particular class or type of case,' . . . and a court's subject matter jurisdiction 'is determined without regard to the rights of the individual parties involved in a particular case.'" *Ostanek v. Ostanek*, 2021-Ohio-2319, ¶ 21 quoting *Corder v. Ohio Edison Co.,* 2020-Ohio-5220, ¶ 14. The focus is on whether the court is competent to hear the controversy. *Id*. If a court lacks subject matter jurisdiction, any judgment of that court is void. *Id*. at ¶ 22. Pursuant to R.C. 2301.03(T), the judge of the court of common pleas, division of domestic relations in Allen County, Ohio is assigned "all cases arising under Chapter 3111 of the Revised Code, all proceedings involving child support . . . ." R.C. 3111.02 governs the establishment of a parent and child relationship. Since the Ohio Revised Code specifically grants subject matter jurisdiction over these matters to the Domestic Relations Division of the Common

Pleas Court in Allen County, Brooks claim that the trial court lacked subject matter jurisdiction is in error.

**{¶9}** Brooks also claims that the trial court lacked personal jurisdiction over him. Personal jurisdiction goes to the trial court's authority to enter a judgment against a party in an action. *State v. Montgomery*, 2026-Ohio-1243, ¶ 12 (3d Dist.). "It is axiomatic that Ohio courts can exercise jurisdiction over a person who is a resident of Ohio." *Prouse, Dash & Crouch, L.L.P. v. Dimarco*, 2007-Ohio-5753, ¶ 5. Additionally, personal jurisdiction is waived by a party's first appearance in a case without challenging the personal jurisdiction of the court. *In re J.R.*, 2024-Ohio-626, ¶ 14 (3d Dist.). This case began in 2011. At that time Brooks was personally served with the pleadings at his residence in Lima, Ohio on May 6, 2011. Doc. 9. By residing in Allen County, Ohio, Brooks was subject to the personal jurisdiction of an Allen County Ohio trial court. Brooks appeared for a hearing on July 11, 2011 in which he acknowledged he was the biological father of the child and agreed to pay child support as shown by the agreed entry signed by Brooks. Doc. 14. Brooks also agreed to pay the arrearages of child support owed by him in 2015. Doc. 33 and 36. When the Agency conducted an administrative review of child support in 2022, Brooks raised no objections to the modified child support. Thus, even if the trial court did not have personal jurisdiction over him, he waived any objection to the assumption of personal jurisdiction by the trial court by voluntarily appearing before the trial court without reservation.

{¶10} Brooks next argues that the trial court lacked jurisdiction to order child support because there was no determination of paternity in West Virginia. Initially, this court notes that the determination of paternity in Ohio occurred in 2011. Brooks did not object to the finding of paternity and, in fact, admitted to it in the agreed entry in 2011. At no point did Brooks appeal from the judgment establishing paternity. As such the matter is barred from being raised 15 years later by the doctrine of res judicata. *In re L.C.*, 2025-Ohio-193 (2d Dist.). Thus, the trial court did not lack jurisdiction to enter the judgments it did and the first assignment of error is overruled.

*Due Process*

{¶11} In his second assignment of error, Brooks argues that he was denied due process. His argument is that 1) he was denied a hearing before his tax refunds and wages were garnished, his tax refunds were claimed, and restrictions were placed on his passport; 2) the clerk of courts was untimely in docketing which caused inaccurate garnishments; and 3) he was denied the opportunity to contest seizures. The general rule is that an appellate court will limit its review to issues decided by the trial court in the judgment from which the appeal is taken. *Lycan v. Cleveland*, 2016-Ohio-422, ¶ 21. The December 10, 2025 judgment subject to this appeal did not address these issues. Thus, they will not be addressed for the first time on appeal. Additionally, a review of the record shows that the trial court held a hearing before the initial child support order. Brooks was

then given the opportunity to request hearings on all administrative reviews of child support, taking advantage of that opportunity in 2025. As to the rest of the allegations raised in this argument, the issue of garnishment, tax refunds and passports are not part of the judgment from which the appeal was taken and are not properly before this court. The second assignment of error is overruled.

*Fraud and Constitution Conflict*

{¶12} Brooks argues in the third assignment of error that there was extrinsic fraud. His first claim is that since there was no paternity or support order at initiation, he was denied a fair adjudication of jurisdiction and paternity. This claim is false. There was a paternity finding and a support order. Both were agreed entries signed by Brooks. No appeal was taken from these judgments. As these issues were not raised in a timely appeal, they are bound by the doctrine of res judicata.

{¶13} Brooks second claim is that federal funding rewards collections under federal law, thus incentivizing corrupt adjudication. The third claim is that he only agreed to submit to the paternity test due to coercion. Brooks cites to no evidence in the record and a review of the record shows there is no evidence to support either of these claims. Although Brooks attached records and affidavits to his brief, they were not part of the record. Items attached to an appellate brief which are not part of the record will not be considered by the appellate court. *State v. Booher*, 54 Ohio App.3d 1, 15 (3d Dist. 1988). Additionally, if there was any merit to them, the claims should have been brought via appeal in 2011 when the initial determinations

were made. Since they were not timely raised, they are barred by the doctrine of res judicata. Finally, the trial court did not address these claims in the judgment from which the appeal is brought, so we will not address them for the first time on appeal. The third assignment of error is overruled.

*Constitutional Guarantees*

{¶14} In the fourth assignment of error, Brooks claims that the Agency is violating his constitutional rights and claims that the Agency, the clerk of court and other agencies used their authority to enforce a "void child support scheme" in violation of 42 U.S.C. § 1983. In Brooks' brief, he does not cite to anything in the record that supports his argument, only an affidavit attached to his brief. As previously noted, items not part of the record may not be considered by this Court even if they are attached to the brief. We also note that this claim raises a federal law issue, not a state law issue. This Court is a state court and does not deal with claims based solely on violation of federal law. Additionally, this issue was not raised in or addressed by the trial court. Thus, this Court will not address it for the first time on appeal. The fourth assignment of error is overruled.

*Continued Enforcement*

{¶15} In the fifth assignment of error, Brooks claims that the trial court and other state actors violated his due process rights by continuing enforcement of the child support order while the appeal was pending. This appeal is from the judgment entry of December 10, 2025. None of the actions raised by Brooks in this

assignment of error were addressed by the trial court in that judgment entry, and some occurred after that entry was filed. Thus, they are not before this court for review.

{¶16} Even if the issues were reviewable, the enforcement of a child support order while an appeal is pending is not prohibited by Ohio law. To the contrary, Ohio law specifically provides that absent a stay and supersedeas bond, the trial court retains jurisdiction to enforce child support orders during an appeal. R.C. 2505.09. In this case, Brooks repeatedly filed motions to stay the judgment. This Court repeatedly denied the motions. As there was no stay obtained and no supersedeas bond filed, the Agency was permitted, in fact required by Title IV-D of the Social Security Act, to enforce the child support order. The fifth assignment of error is overruled.

{¶17} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Court of Common Pleas of Allen County, Domestic Relations Division is affirmed.

***Judgment Affirmed***

**ZIMMERMAN, P.J. and WALDICK, J., concur.**

Case No. 1-26-01

# JUDGMENT ENTRY

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. *See* App.R. 30.

_____
John R. Willamowski, Judge


_____
William R. Zimmerman, Judge


_____
Juergen A. Waldick, Judge

DATED:
/hls